FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 22, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELISSA MARIE N.,[1]<br><br>                    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br><br>                    Defendant. | No:  4:22-cv-05058-LRS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 10, 11.  This matter was submitted for consideration without oral

---

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy.  *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

ORDER - 1

argument.  Plaintiff is represented by attorney Chad Hatfield.  Defendant is represented by Special Assistant United States Attorney Jeffrey E. Staples.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is granted and Defendant's Motion, ECF No. 11, is denied.

## JURISDICTION

Plaintiff Melissa Marie N. (Plaintiff), filed for disability insurance benefits (DIB) on February 23, 2019, alleging an onset date of December 13, 2017.  Tr. 173-74.  Benefits were denied initially, Tr. 106-08, and upon reconsideration, Tr. 110-12.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 23, 2021.  Tr. 33-71.  On April 1, 2021, the ALJ issued an unfavorable decision, Tr. 12-30, and the Appeals Council denied review, Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1974 and was 46 years old at the time of the hearing.  *See* Tr. 173.  She has a high school diploma and an associate's degree from a community college.  Tr. 40.  She has work experience as a licensed massage therapist and a realtor.  Tr. 40.  In December 2017, Plaintiff was involved in an

automobile accident.  Tr. 43.  Plaintiff testified that since then, she does not use her right arm as often because she drops things.  Tr. 43.  There is numbness, tingling, and burning in her shoulder every day.  Tr. 43.   She testified that she is unable to lift anything more than a couple of pounds.  Tr. 44.  She has problems from her neck down the right arm if she uses her hands in front of her.  Tr. 45.  She relieves pain approximately three times per day by lying down with an icepack or heat pack.  Tr. 47.  She gets some relief from chiropractic treatment.  Tr. 50.

Plaintiff testified she gets headaches one to two times per week.  Tr. 47.  If she works at something for too long, a migraine will be triggered.  Tr. 44.  She has stopped driving since the accident in part due to anxiety but primarily because gripping the steering wheel triggers numbness and tingling.  Tr. 52.  Range of motion in her neck is limited and reduces her ability to check her blind spot.  Tr. 52.  She has had treatment for depression and anxiety.  Tr. 52.  Plaintiff testified she has difficulties with concentration and memory.  Tr. 54.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

ORDER - 4

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a

person from engaging in substantial gainful activity. 20 C.F.R. §

404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must assess the

claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is

not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing

such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the

Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant

ORDER - 6

is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff engaged in substantial gainful activity from January 2018 through June 2018.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments:  cervical headaches; cervical spondylosis; and brachial plexitis in the upper right extremity.  Tr. 18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 19.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> She can lift up to 20 pounds occasionally, 10 pounds frequently, stand or walk about six hours in an 8-hour workday and sit for about

six hours per 8-hour workday with normal breaks. She can frequently balance, stoop, kneel and crouch; frequently climb ramps and stairs; occasionally crawl; never climbing ladders, ropes or scaffolds. She can occasionally reach overhead/fully extend the right upper extremity. She can frequently handle and finger with the right dominant hand. No moving or dangerous machinery or unprotected heights. No driving of a motor vehicle at work. In addition, the claimant needs work where concentration is not critical.

Tr. 19-20.

At step four, the ALJ found that that Plaintiff is unable to perform any past relevant work. Tr. 24. After considering Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as mail clerk, garment sorter, or warehouse clerk. Tr. 24-25. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 13, 2017, through the date of the decision. Tr. 25.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for review:

1. Whether the ALJ properly considered Plaintiff's symptom testimony;

2. Whether the ALJ properly considered the medical opinion evidence;

3. Whether the ALJ properly considered the Listings; and

4. Whether the step five finding is legally sufficient.

ORDER - 8

ECF No. 10 at 7.

## DISCUSSION

**A.    Symptom Testimony**

Plaintiff contends the ALJ failed to properly consider her symptom testimony. ECF No. 10 at 19-20.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his or her testimony and his or her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ's decision must contain specific reasons for the weight given to the claimant's symptoms and be consistent with and supported by the evidence, which must be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms. Social Security Ruling 16-3p, 2016 WL 1119029, at *9. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). While the ALJ is not required to perform a line-by-line analysis of the claimant's testimony, the ALJ is still required to do more than offer "non-specific conclusions that

[claimant's] testimony was inconsistent with her medical treatment." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

First, the ALJ found that Plaintiff's conditions improved with treatment. Tr. 22. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The ALJ observed that Plaintiff alleges she experiences chronic neck and right shoulder pain and has one to two migraines per week, but her neck pain significantly improved after medial branch block facet injections. Tr. 22. In support, Defendant cites an October 2018 office visit record which states that "[s]he had 2 diagnostic medial branch blocks which gave her complete temporary relief after both blocks." ECF No. 11 at 15. However, it was noted that "[t]he first injection lasted one hour and . . . the second injection lasted about 4 hours." Tr. 431. Furthermore, the provider went on to note in the same record that, "[t]he patient has moderate to severe pain, and has failed conservative care" and referred her for a surgical consultation. Tr. 434. This documentation of temporary, short-term relief does not reasonably constitute evidence of improvement with treatment. Additional citations by the ALJ do not

ORDER - 11

support that lasting relief was obtained from the medial branch block facet

injections.  Tr. 22 (citing Tr. 429, 435, 439, 445, 656).  Furthermore, as noted above,

the medial branch blocks were diagnostic tools, not continuing treatment.  Tr. 431;

*see also* 424.  Additionally, none of the records cited by the ALJ or the Defendant

address the treatment of migraines or demonstrate improvement of Plaintiff's

migraines with treatment.  This reasoning is not supported by substantial evidence.

Second, the ALJ found that Plaintiff's allegations regarding right arm

weakness were not consistent with the objective findings.  Tr. 22.  An ALJ may not

discredit a claimant's pain testimony and deny benefits solely because the degree of

pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*,

261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th

Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical

evidence is a relevant factor in determining the severity of a claimant's pain and its

disabling effects.  *Rollins*, 261 F.3d at 857.  Minimal objective evidence is a factor

which may be relied upon in discrediting a claimant's testimony, although it may not

be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  The

ALJ's only other reason for rejecting Plaintiff's symptom statements is not

supported by substantial evidence, as discussed *supra*.  Since that reason was

insufficient, and because a lack of supporting objective evidence cannot be the only

reason for rejecting a claimant's symptom claims, the ALJ's reasoning is

ORDER - 12

insufficient.  The matter must be remanded for reconsideration of Plaintiff's symptom statements.

**B.    Medical Opinions**

Plaintiff contends the ALJ failed to properly evaluate the opinions of Virtaj Singh, M.D.; Paul Dodson, D.C.; Peter Meis, M.D.; and Erin Sharma, M.Ed., LMHC. For claims filed on or after March 27, 2017, the regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s). . ." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may, but is not required, to explain how other factors were considered.  20 C.F.R. § 404.1520c(b)(2); *see* 20 C.F.R. § 404.1520c(c)(1)-(5).

*1.  Virtaj Singh, M.D.*

On September 12, 2019, Dr. Singh performed a clinical evaluation and assessed chronical cervical sprain/strain with right upper extremity dysethesias and weakness; probable neurogenic thoracic outlet syndrome secondary to post-traumatic cervical dystonia; probable concomitant injury to right-sided facet joints, minimal

improvement status post radiofrequency ablation to the right C2-3, C3-4, and C4-5 facet joints; and concussion with persistent post-concussive symptoms.  Tr. 625-30. Dr. Singh described Plaintiff's condition as "very straightforward" and found that Plaintiff "very clearly has signs and symptoms consistent with neurogenic thoracic outlet syndrome."  Tr. 630.  Dr. Singh opined that Plaintiff is "very disabled" and that she is not capable of employment that would require anything but seldom forward reaching.  Tr. 630.

The ALJ found that Dr. Singh's opinion that Plaintiff is "very disabled" is a statement on an issue reserved to the Commissioner and is neither valuable nor persuasive.  Tr. 23; *see* 20 C.F.R. § 404.1520b(c)(3).  The ALJ also found that "Dr. Singh's opinion is inconsistent with his own examination findings and the conclusion [of] Dr. Price."  Tr. 23.

With regard to supportability, the regulations provide that the more relevant the objective medical evidence and supporting explanations provided by a medical source to support his or her opinion, the more persuasive the medical opinion will be.  20 C.F.R. § 404.1520c(c).  To the extent the ALJ's statement that Dr. Singh's opinion is inconsistent with his own exam findings was intended to address supportability of the opinion, the finding is insufficient.  The ALJ is required to explain how the supportability factor was considered.  20 C.F.R. § 404.1520c(b)(2). Dr. Singh, who is the director of a spine and sports medicine clinic and is a rehabilitative medicine specialist, completed a seven-page report including a detailed

description of Plaintiff's complaints, a review of available medical records, a the results of a thorough examination, and an explanation of the basis for the diagnoses and his conclusions. Tr. 625-30. On its face, the opinion is well-supported. The ALJ did not discuss or explain what evidence or explanation in the evaluation undermines Dr. Singh's opinion. Tr. 23. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). The ALJ failed to adequately discuss the supportability of Dr. Singh's opinion.

With regard to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c). The only evidence identified by the ALJ as inconsistent with Dr. Singh's opinion is the opinion of John Scott Price, M.D., an orthopedic surgeon who evaluated Plaintiff on September 12, 2019, the same day she was examined by Dr. Singh. Tr. 620-24.

Dr. Price diagnosed diffuse right upper extremity neuritis/brachial plexitis versus primary cervical radiculopathy and mild C4-5 spondyloses and mild right carpal tunnel syndrome of uncertain significance. Tr. 620. Dr. Price opined that "objective imaging shows very mild spondylosis and her EMG also has very mild findings" so he rated her as "category 1 Permanent Partial Impairment," which the ALJ noted is the least severe impairment, based on the Department of Labor and

Industries guidelines for cervical spine impairment.  Tr. 621.  The ALJ determined that Dr. Price's assessment of a "category 1 Permanent Partial Impairment" is "vastly discrepant" with Dr. Sing's conclusion, and that Dr. Price's disability rating is more consistent with the mild imaging pathology and objective exam findings. Tr. 22.

The ALJ is correct that the findings of the doctors differ, but it is not clear that they are inconsistent.  Dr. Price's diagnosis is based on MRI, x-ray, and radiograph imaging.  Tr. 621 (Plaintiff's "diffuse right arm neuritis is most likely related to a brachial plexitis based on the current MRI which does not show any significant right-sided stenosis.").   Although he mentioned her history of facet blocks, it is not clear that he reviewed those records or assigned any significance to the outcome.  Tr. 621.

As Plaintiff points out, Dr. Singh's diagnoses are consistent with the findings of Allen Shoham, M.D., the orthopedist who administered the branch blocks.  ECF No. 10 at 11-12.  In January 2019, Dr. Shoham acknowledged that EMG studies and MRIs "ruled out any cervical radiculopathy," so cervical facet mediated pain was considered.  Tr. 424.  He noted that diagnostic medial branch blocks were undertaken in order to establish the diagnosis.  Tr. 424.  Dr. Shoham stated:

> Facet mediated pain and cervicogenic headaches after whiplash type injuries are not diagnosed with MRI scans.  The patient does not need to have arthritis of the facet joints to have facet mediated pain . . . Facet mediate pain is purely a clinical diagnosis and it is diagnosed purely with diagnostic medial branch blocks which showed that this was the source of the patient's pain.  . . . The main role for MRI scans

ORDER - 16

and facet mediated pain is ruling out the other neuraxial sources of
pain such as severe spinal stenosis or severe foraminal stenosis with
this patient did not have.

Dr. Shoham's explanation appears to reconcile the mild imaging findings which are

the basis for Dr. Price's conclusion with Dr. Singh's findings, which are based on

clinical findings and Plaintiff's response to the diagnostic branch blocks.  Tr. 630.

Defendant suggests that Dr. Shoham's statement is of minimal importance because it

is a "two-paragraph letter," ECF No. 11 at 15, yet it provides context for Dr.

Shoham's treatment records and findings as well as the record overall.  It suggests to

the Court that comparing the findings of Dr. Price and Dr. Singh and concluding that

Dr. Singh's findings are unsupported on that basis improperly fails to account for

relevant medical context.

The ALJ summarized the findings of Dr. Singh and Dr. Price but did not

evaluate them with any further specificity.  With the context of Dr. Shoham's

explanation, which was not mentioned or cited by the ALJ, it is apparent that the

nuances of Dr. Singh's opinion and Dr. Price's findings were not adequately

considered.  Thus, substantial evidence does not support the ALJ's conclusion that

Dr. Singh's opinion is inconsistent with Dr. Price's findings.

It is also noted that Dr. Price's disability rating is an issue reserved to the

Commissioner which the regulations provide is inherently neither valuable nor

persuasive.  20 C.F.R. § 404.1520b(c)(3).  Indeed, the ALJ rejected Dr. Singh's

statement of disability on that very basis.  Notwithstanding, the ALJ appears to have

improperly given significant weight to Dr. Price's statement of permanent partial impairment, which is not defined or explained in the record.  Tr. 22.  Lastly, the ALJ identified no evidence contradicting the functional limitation of seldom reaching assessed by Dr. Singh.   Dr. Singh's opinion must be reconsidered on remand.  It may be appropriate to obtain testimony from a medical expert who can bring longitudinal context to the medical record.

### 2.  Paul Dodson, D.C.

In September 2018, Plaintiff's chiropractor, Dr. Dodson, wrote a note indicating that Plaintiff should be excused from work until more tests could be done on her wrist and hand to determine the extent of her carpal tunnel syndrome.  Tr. 314. In October and November 2018, Dr. Dodson wrote notes stating that the December 2017 motor vehicle accident caused Plaintiff to be unable to work.  Tr. 315.  He indicated that Plaintiff should never lift more than 20 pounds and should not put too much pressure on her arm.  Tr. 315.

The ALJ found Dr. Dodson's opinions unpersuasive.  Tr. 23.  First, the ALJ noted that as a chiropractor, Dr. Dodson is "not an acceptable medical source."  Tr. 23.  Second, the ALJ found that Dr. Dodson's opinions are inconsistent with the objective findings in the longitudinal medical record and the opinions of the DDS physical medical consultants.  Tr. 23.

First, under regulations effective since May 2017, a medical source's status as an "acceptable medical source" is not relevant to the persuasiveness of a medical

opinion.  *See* 20 C.F.R. § 1520c.  As noted *supra*, the ALJ must consider the factors of supportability and consistency with regard to the opinion of any medical source.  *Id.*  Dr. Dodson's chiropractic credential alone is not a basis for rejecting the opinion or finding it less persuasive.

Second, with regard to consistency, the ALJ found Dr. Dodson's opinions inconsistent with the findings in the longitudinal medical record and the opinions of the DDS physical medical consultants.  Tr. 23.  Assuming without deciding that the consistency finding is supported by substantial evidence, the ALJ's consideration of Dr. Dodson's opinion is still insufficient.

The ALJ did not discuss, address, or mention the supportability of Dr. Dodson's opinion.  Tr. 23.  This is insufficient under the regulations which state that "we will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision."  20 C.F.R. 404.1520c(b)(2).  As Plaintiff observes, Dr. Dodson's treatment records span nearly 100 pages, Tr. 318-410, but the ALJ did not cite any of Dr. Dodson's records or findings or otherwise assess the supportability of the opinion.  *See* 20 C.F.R. § 404.1520c(c)(1) ("the more relevant the objective medical evidence and supporting explanations provided by a medical source to support his or her opinion, the more persuasive the medical opinion will be").  The ALJ's analysis of Dr. Dodson's opinion is legally insufficient.  On remand, the ALJ should reconsider the opinion of Dr. Dodson.

1    *3.  Peter Meis, M.D.*

2    In June 2019, Dr. Meis, a psychiatrist, evaluated Plaintiff and diagnosed major

3    depressive disorder and PTSD.  Tr. 614-19.  He found Plaintiff's ability to perform

4    simple and repetitive tasks is fair and her ability to perform detailed and complex

5    tasks is poor and impaired, based on her performance on the cognitive exam.  Tr.

6    618.  He assessed her ability to perform work activities reliably and efficiently

7    without special or additional instructions as impaired and poor, based on her

8    activities of daily living.  Tr. 618.  He also assessed her ability to maintain regular

9    attendance in the workplace as "questionable," based on her difficulty with anxiety

10    related to transportation.  Tr. 618.  Lastly, he found her ability to interact with

11    coworkers and the public and to adapt to the usual stresses encountered in the

12    workplace to be fair to poor, based on her interpersonal presentation.  Tr. 618.

13    The ALJ found Dr. Meis' opinion to be unpersuasive.  Tr. 23.  With regard to

14    supportability, the ALJ found the opinion to be inconsistent with his largely

15    unremarkable mental status examination showing normal speech, normal thought

16    process/content, and mild cognitive deficits in memory and concentrations.  Tr. 23.

17    However, Dr. Meis explained which findings from the mental status exam and

18    clinical interview support each limitation he assessed.  Tr. 618.  For example, in

19    finding Plaintiff's ability to perform simple and repetitive tasks to be fair, he listed

20    findings from the cognitive exam including struggles with number repetition,

21    missing one out of three items on delayed three-item recall, slight mistakes in money

ORDER - 20

manipulation, and struggles with serial seven subtraction.  Tr. 618.  The ALJ's

conclusion that Dr. Meis's conclusions are unsupported is itself unsupported.  It is

improper for an ALJ to act as his own medical expert, substituting his opinion for

the opinion of a medical doctor.  *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th

Cir.1975); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay

person, an ALJ is "not at liberty to ignore medical evidence or substitute his own

views for uncontroverted medical opinion"; he is "simply not qualified to interpret

raw medical data in functional terms.").   This reasoning is not supported by

substantial evidence.

    With regard to consistency, the ALJ found Dr. Meis' opinion to be

inconsistent with the longitudinal medical record showing Plaintiff has engaged in

minimal mental health treatment.  Tr. 23.  However, minimal mental health

treatment is not a sufficient basis for rejecting a medical opinion.  *See Nguyen v.

Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[T]he fact that claimant may be one

of millions of people who did not seek treatment for a mental disorder until late in

the day is not a substantial basis on which to conclude that [the doctor's]

assessment of claimant's condition is inaccurate.").   The ALJ's finding regarding

consistency is insufficient.  On remand, Dr. Meis' opinion shall be reconsidered.

    *4.  Erin Sharma, M.Ed., LMHC*

    In September 2018, Ms. Sharma's treatment note indicates Plaintiff's "current

symptomology" involved dreams and flashbacks about her December 2017 car

ORDER - 21

accident.  Tr. 642.  Plaintiff was noted to have extreme anxiety symptoms of impending doom, problems with breathing, and was constantly ruminating about a loss of control while driving or being in a vehicle.  Tr. 642.  Ms. Sharma stated, "These symptoms have kept her from working and significantly impaired her functioning."  Tr. 642.  Ms. Sharma also concluded that Plaintiff was "unable to work at this time with any regularity due to the intrusiveness of her symptoms."  Tr. 644.

The ALJ did not discuss Ms. Sharma's statements or evaluate their persuasiveness, nor did the ALJ cite or otherwise mention any of Ms. Sharma's records.  Tr. 18-24.  Plaintiff argues the ALJ erred by failing to address Ms. Sharma's statement "which establishes disability."  ECF No. 10 at 17.  Defendant argues that Ms. Sharma's statements about Plaintiff's ability to work are statements about whether she is able to perform regular or continuing work, which are neither valuable nor persuasive as statements on issues reserved to the Commissioner under 20 C.F.R. § 404.1520b(c)(3).  ECF No. 11 at 11.  The Court agrees with Defendant and further concludes Ms. Sharma's statements do not constitute a medical opinion under 20 C.F.R. § 404.1513 (defining a medical opinion as a statement from a medical source about what a claimant can still do despite any impairments and any impairment-related limitations or restrictions in the ability to perform the demands of work activities).  The ALJ was not required to evaluate the persuasiveness of Ms. Sharma's statements.

**C.      Step Three – Listing 11.02**

Plaintiff contends the ALJ failed to properly consider Listing 11.02.  ECF No. 10 at 18-19.  At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the Listings.  *See* 20 C.F.R. § 404.1520(d).  The Listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy*, 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, he or she will be found to be disabled.  20 C.F.R. § 404152(a)(4)(iii).

An impairment "meets" a listing if it meets all of the specified medical criteria.  *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1098.  An impairment that manifests only some of the criteria, no matter how severely, does not qualify.  *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1099.

An unlisted impairment or combination of impairments "equals" a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. § 404.1526(b). "Medical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. § 404.1526(b). The claimant bears the burden of establishing an impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683.

There is no medical listing for migraines or headaches. However, Listing 11.02 is the appropriate listing for an equivalence analysis for headaches and migraines. Social Security Ruling (SSR) 19-4p, 2019 WL 4169635 (August 26, 2019). The ALJ considered Listing 11.02, the analogous listing for migraines, and concluded that "[t]he medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination of any listed impairment." Tr. 19.

Plaintiff seems to take the position that asserting a certain frequency of headaches means she equals Listing 11.02B without establishing the documentary

ORDER - 24

requirements of the listing.  ECF No. 10 at 18-19.  In applying the listing to headaches, SSR 19-4p notes Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p.

Plaintiff cites her own testimony, Tr. 47-49, one treatment record, Tr. 462-63, and brain imaging, Tr. 415, as evidence her headaches equals Listing 11.02B.  ECF No. 10 at 18-19.  As noted *supra*, Listing 11.02B and SSR 19-4p require that "despite adherence to treatment" the frequency and severity of headaches meet the listing requirements as documented by an "acceptable medical source."  Thus, Plaintiff's testimony does not establish frequency required by Listing 11.02B because Plaintiff is not an acceptable medical source.  In the medical record cited by Plaintiff, the doctor noted that he "discussed treatment options at length with the patient."  Tr. 465.  He indicated that she "is taking ibuprofen for acute management

ORDER - 25

of these headaches with benefit.  She declined a medication for headache

prophylaxis and acute management."  Tr. 465.  Thus, the record does not establish

the frequency required by the Listing "despite adherence to treatment."  Finally, the

brain imaging referenced by Plaintiff indicates findings may be caused by "sequela

of prior trauma, infection, chronic migraine headache syndrome, or less likely

chronic vasculitides or demyelinating disease.  These may be clinically incidental."

Tr. 415.  These are just suggested causes of the imaging findings, not a finding or

diagnosis of chronic migraine headache syndrome; in fact, the record suggests that

the imaging findings might be incidental.  Plaintiff has not shown how this imaging

establishes that she meets Listing 11.02B criteria.  As noted *supra*, the burden is on

the Plaintiff at step three.  Plaintiff has not demonstrated that the ALJ erred in

evaluating Listing 11.02B.

**D.    Step Five**

Plaintiff argues the vocational testimony relied on by the ALJ was without

evidentiary value because it was provided in response to an incomplete hypothetical.

ECF No. 10 at 21.  The ALJ's hypothetical must be based on medical assumptions

supported by substantial evidence in the record which reflect all of a claimant's

limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The

hypothetical should be "accurate, detailed, and supported by the medical record."

*Tackett*, 180 F.3d at 1101.  Because the ALJ erred in evaluating Plaintiff's symptom

statements and the medical opinion evidence, the step five finding is also in question.  On remand, the ALJ shall reconsider step five.

**E.    Remedy**

Plaintiff contends that the appropriate remedy is to remand for an award of benefits.   ECF No. 10 at 21-22.  Defendant argues that a disability finding is inappropriate and the matter should be remanded for further administrative proceedings.  ECF No. 11 at 13-14.  To find Plaintiff disabled and remand for an award of benefits, the Court must find that the record has been fully developed and further administrative proceedings would not be useful.  *Garrison*, 759 F.3d at 1019-20; *Varney v. Sec. of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled even if the evidence was properly evaluated.  Further proceedings are necessary for the ALJ to reconsider the medical opinion evidence and the Plaintiff's symptoms testimony.

**CONCLUSION**

ORDER - 27

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. On remand, the ALJ should reconsider the opinions of Dr. Singh, Dr. Dodson, and Dr. Meis, and shall provide legally sufficient explanations in evaluating the persuasiveness of the opinions. The ALJ should also reevaluate Plaintiff's symptom testimony and conduct a new sequential evaluation.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** February 22, 2024.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 28